Next case we will hear is Bass v. Weinstein Management and Mr. McGinnis, whenever you are ready, we will hear from you. Good morning, may it please the Court, Edward McGinnis for the appellants in this action. There are two methods under North Carolina law in which a statute can be held to have retroactive effect and two separate tests for those two different manners. And I think it is important not to conflate the two. The first argument that my friend has made is regarding what we have styled as the clarification argument. A clarification to a statute means the law was always this way. And so it has retroactive effect because it always meant this way. The test for that under the North Carolina Supreme Court is a case called Ray. And what Ray says to do when evaluating whether or not an amendment is clarifying is pretty simple. It just says look at the two statutes and compare them. If there are substantive changes to the statute, it is a substantive amendment with prospective effect. If there are no substantive changes to the statute, it is a clarifying amendment and it can have retrospective effect. The Court has already looked at this in the Suarez case, an unpublished decision from last year regarding the 2018 amendment to North Carolina General Statute 4246 and found, applying Ray, that there were three changes from the 2009 statute which was in play at the time Ms. Bass was charged these fees. Number one, added the right to charge filing fees simply for filing an eviction. Number two, charge sheriff service fees. Number three, expand the right to charge attorney's fees. The analysis here on the clarification argument is identical. The 2021 statute has the exact same substantive issues as 2018. So if we want a clarifying amendment, we have to compare 2021 with 2009 and look and see whether or not there's changes. And there's three changes, exactly like there was in the Suarez opinion. My friends over there have remarked there were 20 pages in their brief about clarification and they talk about legislative intent and they don't talk about the Ray test at all. And the reason for that is because they know how Suarez came out. There is no magic. The issue here that you bring is the clarification under the 21 amendment of the 2018 law. So what has been argued is that the 2021 amendment is both clarifying and retroactive, the first one being clarification. That part I got, but I want to know what the 2018 statute, you're not arguing with God did that. No. You're saying you can have a matter in which an individual has a right to do something statutory, we'll use that word. The legislature then passes something and says, oh, no, that's not so. Court determines it, well, yes, it is. Then it passes another act and says, well, it is. We're going to go back and say, yes, it is retroactive. You're saying that second time around. Let me just get to this. This is what's the trouble about this. And I know the difference that's articulated between statutory and common law type rights and investing. But individuals pursue an action and for whatever reason, we know the General Assembly didn't just sit there and read that statute and say, I want to change it. It could be the plaintiffs went to them and anybody went, which they can do. There's nothing wrong with it. Plaintiffs can go in and lobby to that General Assembly, change a rule for ordinary folks who are applying for it. And they do it and the court says, no, what you've done is that's a substantive change you've just made. And then they come back and say, oh, no, it's not substantive, I guess. It could be retroactive. Right. The problem on the clarification argument. So how does a General Assembly change something that the court said was substantive into non-substantive with an amendment? They can't. That's the issue here. If they're clarifying the amendment, it can't have been a substantive change. That's a clarification. I'm not going to be argumentative. I'm just understanding what is substantive.  But then to clarify is like saying, no, it's not substantive. But how do you determine that? I mean, the court told you it was substantive. So now you come back and say, no, it's not substantive? Right. Legislatures make laws, courts interpret them. And what's been argued here is essentially that legislatures ought to have the right to have an extrajudicial review of the court decision. That's particularly problematic in the context. Typically prospective, though. It makes sense that from now on, you can do these things. But to go back to someone who's actually sitting in court, paid all this money, getting ready to go to proceed on, you're going down to twos because you're going to lose it because the statute had provided a remedy. They come along and said, no, you can't do it. We're going to help these people out so you don't have to do that. Particularly problematic. They can just do that. No. They can change the law. All right. We're good. That's the question I thought this whole case was about. I agree with what Judge Wynn is asking about, but I would take it a step further. Let's assume it's a substantive statute, which is usually, in the ordinary course, only prospective. Almost everybody agrees on that, unless, and I think the general proposition, it's prospective unless the legislature indicates otherwise. And the 2018 statute didn't indicate otherwise. It was unclear. So the presumption that it was not prospective applies. But then the legislature comes and says, it is our intent to be this substantive thing retroactive. And they said that. That's clear as a bell. So the question now is, can that be applied to you where the case is still pending? And I always thought the answer is that they could do that unless they've taken away a constitution, some kind of, and that's a whole analysis here, is if it's a pending action and not finalized by judgment, it's a little bit like getting a permit to build a house. And before you go there and start digging, they withdraw the permit. We've had those types of cases. And we've always said, until you start actually digging, you haven't got a vested right. The same thing with respect to Supreme Court's addressed whether professors have property interests in their employment before they become tenured or after. And I thought that's the question here, is the exception where Congress, that's the legislature made it clear, why can't they do that? And your argument has to be because they took away my property right. And then the question, the whole question is, is a pending action for a claim for mischarging, is that a property right or can that be taken away before you get a judgment? I think that's the second test. So that's... Well, it's not the second test. It's necessary. The first test doesn't get you anywhere. The fact that it's substantive doesn't get you anywhere. What it gets you is a presumption that it's going to operate prospectively. In this record, we don't have that. We have the presumptions overcome by the legislature. They said clearly we want it retroactive. So now your claim is basically, can the legislature act retroactively here in the context of your circumstances? Right. And that's the debate I thought. It is. They made the clarification argument and so we wanted to address it quickly. The retroactivity argument. Well, I thought North Carolina law was real clear that with regard to statutory rights, they don't vest until you have a final judgment, unlike the common law. I mean, take the example of libel, for example. They couldn't change the ability to get compensatory damages under the common law for libel. But if they had added a provision for punitive damages and they take it away, they can take that away. Isn't that the law in North Carolina? I don't think so, Judge Floyd. I think what my friends have argued essentially is that with statutory claims, there is only one way for a right to vest and that's through a judgment. And they cite two cases that don't involve injuries. Our position, and we styled this in our brief, is it's sufficient but not necessary. If you have a judgment, that's sufficient. But there are other ways in which statutory claims can vest. And there's a litany of cases associated with that. Because if there is an injury, what the Open Courts Clause says is every person for an shall have remedy by due course of law. The Forrest case says that these claims that we have before the court are injuries. Now, when you don't have an injury, when you have a penalty case or when you have claims under statute that don't involve injuries, perhaps you do need the judgment. Some of the cases involve that. But there are plenty of cases in which there are other paths to vesting rights, not just injury. For example, the Williams case that's been cited on both sides. That case involved a maximum price for train tickets based on a per-mileage rate, purely a creation of statute. They found that that right had vested without a judgment. The Lester Brothers case involved a corporate liability at the time. If you only had two owners of a corporation, you couldn't get corporate protection. The court found after they changed the law to say it can be one, they said you can be one. At the time, the law of the state made them individually liable and they had a vested right in that liability. So in that case, pure creation of statute, vested right in liability, no judgment. The Heath case that we've cited, another pure creation of statute. If you got bit by a dog, the county would reimburse you for your injuries and seek indemnity from the dog owner. Pure creation of statute, the court found that the county had a vested right against the dog owner and that the plaintiff had a vested right against the county. That judgment was affirmed. So that case was on appeal, no judgment, vested right. The Heath case we just talked about, the Faulkenberry case that we mentioned, that involves the contract clause. State employees had vested rights. What's the relationship between public policy and common law? The relationship between the public policy? Public policy and common law. Is it something that can or is it pretty much the same? The legislature establishes the common law and they can modify the common law. What about public policy? Is that similar to common law? What is that? I think it can be. I think that the public policy of this state at the time was that these fees could not be charged. And so when those fees were charged. Would that be the same way as in the common law at this time? I think if you have been injured, and we've gone down the path of injury, so you can have other paths to a vested right, whether that be statute of limitations, the passage of time, a lien, a judgment is one way, but an injury is another way because the open courts clause protects it. Common law establishes something and is codified in a statute, so to speak, and then subsequently you take it away. Does the right of common law apply in the retroactive sense? Because essentially what you've done is you, by the second action, taken away the public policy, which the initial statute characterized as, it said this is contrary, you saw exactly where I was going with this, contrary to public policy was the reason they did this statute in 2009. It says contrary to public policy, come back in 18 and they get rid of it, so to speak, and in 21 you say clarified, the question being if it was a codification of the common law by the initial statute, and then you come back and get rid of it, have you not essentially just gone against the common law? Which means that the common law would be what was covered up until, because it was a codification of it, until 2018. Does that make follow? I think there's some, yeah, there's some issues with potentially modification of the common law, and that's not to say that public policy can't change and legislation can't be changed, but when you have an injury associated with the public policy at the time. That's all a little bit general. If we get to this case, we have a rental agreement which covered by contract law, and the rental agreement allows for the collection of these fees for ejecting and attorney's fees and so forth. The common law of contract was modified by the statute in 2009 saying the contract cannot provide for the collection of ejection fees, and then the legislature removed that. So we're back to the common law enforcement of a contract in this case, isn't that where we're at? I don't think so. Your client agreed to these fees when they signed the contract. There was no common law that said they couldn't charge ejection fees. Well, there was a statute that said you cannot even put them in a lease. The clause in the lease was unlawful when it was put in there. You can't simply say, well, even though we were breaking the law, you agreed to it. So under the common law, it wouldn't be an enforceable provision anyway. Common law would be the contract. There is nothing in the common law that says you can't charge ejection fees under a rental. The statutory law made it a matter of public policy and said we're not going to allow the collection of ejection fees. That was the 2009 statute. I think the distinction between the common law and the statutory claims is a little bit – it's not as black and white as you might suggest because you can have a statutory claim with an injury. I want to quote from – Of course you can, but you want to constantly work with general concepts and I just want to focus on this case. This case is a contract case or ejectment for failure to pay rent. And so the ejectment fees are provided for in the document. The 2009 statute prohibits that as a matter of public policy. That was done by the North Carolina legislature. They took that out in 2018 and they made it retroactive in 2021. Now it seems to me everything that you're claiming is based on what the legislature did because if you don't rely on what the legislature did, you're back under your contract obligations. And so the question that remains is what I believe is my first question is was it improper for the legislature to make a statute retroactive even though it's substantive? It was. That to me, you're sort of dancing around that. I'm not attempting to, Judge. What we are arguing – Okay, then that's fine. I didn't interpret your dance. What we're arguing is the contract should have never had it in the first place, but at the time there was a pocketbook injury. There was money damages. Here's the point. The point being the initial statute read that way. It wasn't a contract initially. It said it is contrary to public policy to put those in a lease. Basically, this statute says common law or public policy forwards any contracts like that. So when you have 2018, the way I'm seeing it, you then establish a contract right in 2018. This is a codification of the common law, I'm assuming there's a common law. I'm saying the public policy is what I'm using here. That may be somewhere else. But it's an interesting question to me that if the common law is such that it makes this the public policy that forwards these contracts, you don't have contract law control because it says you can't do it until 2018. That's a substantive change. I agree. Then to say you're clarifying what has been a substantive claim, well you clarified it. It was a substantive claim. I'm not following that. Unlawful to put it in a lease at the time. And so under contract law, it's not an enforceable term. They were wrong to charge it. Charges were paid. There are actual damages. That's an injury under every definition. Every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law. That's the North Carolina Constitution. And so in instances where there is no injury, it may be that you require a judgment. But in instances where there is an injury, there's another path, and it's the path protected by the Constitution. Thank you. You have some rebuttal. And we've gone over time here with a little bit. Enriquez, Your Honor. Thank you. Mr. Enriquez for Weinstein Management. Let me go directly to your question, Judge Wynn. You talked about the substantive change in public policy versus common law. I would submit that it is the legislature that actually makes public policy decisions. They make the public policy decision. In this area, the landlord-tenant relationship is one that's governed as a creature of legislation. The whole Chapter 42 deals with the relationship between landlords and tenants. And I think that's different. Judge Floyd is correct that when the legislature creates a statute, they have the right to retroactively take away that statute, provided they do so expressly. And that's what the whole line of cases, starting with Dyer and continuing on in our brief addresses. I do think this is different than the Suarez case. That's what you're really saying, I guess, is that the common law as of that time did not prohibit those fees. You could do it by a contract. Common law wouldn't prohibit it in 2009. That's correct, Your Honor. And that's what the public policy is determined by the legislature. And in fact, you don't have to take my word for it, the Friday decision, which is cited as a 2003 decision, it's important because the lease there said that the tenant had to pay an administrative fee, that's a term from the Friday decision, of $75 plus court costs. So no question that in 2018, at least from the court's determination, that was a substantive change. 2018, we're stuck with 2018, we're stuck with it being a substantive change, is that correct? The court found that in the Suarez case, that 2018 was a substantive change. That's a done deal on that. So the only issue is, once the court says, okay, you made a substantive change here, 2021 comes along, legislature comes back and says, it's not a substantive change. And let me explain why that is. When you look at the statute, two reasons. First of all, as the court in Suarez noted in footnote five, legislative- Let me be clear. In other words, to make something not substantive, all the legislature have to do is say it's not substantive. No, your honor. No, they have to actually make a clarifying change. And what they did wrong, if you will, in 2018 is, instead of redefining or clarifying what they meant by fees in H3, they added a new section I, that the court said, this is a brand new provision saying you can collect out-of-pocket expenses. So the court, the legislature, and it didn't say it was clarifying and it didn't say it was retroactive. So the court had to look at that. They said, this looks like a new exception. We're only going to provide it prospectively. That's the decision in Suarez. And you can accept that as a correct decision and still reach a different result in 2021 because what they did then is they went back and inserted the word administrative before fees. And as we've argued, that clarifies those were the fees that they were talking about way back in 2009. They were really only talking about administrative fees. They never intended to restrict all fees. In fact, we know that that's true because court costs were charged on Friday and they were never addressed. In fact, an argument that's not in our brief, but I think it's important, is if you look at the subsection immediately before H3, H2, it talks about a landlord who earns an administrative fee or earns a fee and that earns language was there before. You can't earn court costs. They were talking about these fees that landlords earn by processing the eviction filing and then the subsequent fees for court appearance and appeal. Those were landlord fees and they don't compensate for the $96 court costs. They're tied to a percentage of the amount of the rent, the monthly rent. It's 5% or then 10 and 12%. Those are earned fees. It's true that a filing fee sounds like a fee and that's what Suarez said. These are fees. It's a fee charged by the court, but it's an expense of the landlord. It's an out-of-pocket expense. This has been a good educational case for me. I mean, I thought I knew a lot of stuff, but essentially it boils down to if it is purely a statutory right that's conferred, even when you pursue it, let's take attorney's fees for instance.  That is correct, John. And so you earn all these attorney fees and the other side can go and lobby the legislature and they can get it through and get it signed. You won't get a dime. That's true, Your Honor, because that right to cover attorney fees is a creature of statute and the legislature can change it. And it applies to anything else, not just attorney's fees, but any rights whatsoever that consumers may or individuals may get. All you need is a lobbyist or someone with some sufficient oomph or whatever to go to the legislature and get them to change it. And even if you filed a suit, even if the jury is out there waiting to bring back the verdict before they bring that back in, if you get that governor to sign that, you won't get anything. Your Honor, it is true that until you have... That is true, isn't it? Yes. Until judgment, statutory rights can be removed. I think, I know they talk about the fact there was lobbying. They ignore the fact that this was unanimously passed by all the Democrats and Republicans and signed by the Democratic governor. ...basis for this distinction of common law versus statutory rights. Where does that arise from? Well, it arises from the fact that the legislature's in charge of legislative acts. These are... They can give these... Does it come from case law? Yes, Your Honor. Is it constitution? Where does it come from? Well, it is case law. It's really, it goes fundamentally to the separate roles of the government. So the courts have to protect individuals and their... Is it constitution? Yeah, I think it is fundamentally constitutional. The courts, we as citizens have certain common law rights that can't be abrogated by the legislature. But when the legislature gives us a right, even in the dire case... The distinction between the value of having a common law right as opposed to a statutory right that leads one to say, if you have a common law right, you get that thing best when you've been injured. If you don't have a statutory right, you only get it from a judge. Where does that come from? It comes from who gave you the right. So we have our common law rights as opposed to... I mean, that's the... I'm talking about the source. Who came up with that idea is what I'm trying to understand. Well, I think it's the North Carolina Supreme Court. Obviously, what this court has to do is... What was the case? What? What was the case? Dyer is really the first case that dives into that, Your Honor. Dyer did this in that case. So this is North Carolina law. And they cited... Yes. This is North Carolina law. This is North Carolina law. And there's no way we can certify a question in North Carolina. They don't even allow this sort of stuff, do they? They do not, Your Honor. That's why you have to guess as to what the North Carolina... They just let us come up here and guess what it is, and they're happy with it and move on. Unfortunately, that's... Unfortunately, they do... They own the state. They own the state in our entire... But you know, we're so lucky we have Judge Nguyen, who's a North Carolina judge here. I know you, sir... I'll get the Maryland judges and everybody will agree with me, because they're telling me what North Carolina law is. And that is... That's what we're stuck with. I do think it's remarkable. My friends on the other side want this court to recognize a new claim. No court has ever found retroactivity violating the open court's provision. They don't cite a single case. They want you to guess that the North Carolina Supreme Court would create this brand new right that has almost no limit. They're saying under the new Forrest case, an injury is anything provided by statute. So if you... Whether it's a penalty, like the cases we talked about, or whether it's a right to collect money or a rebate from the utilities case, or the right for equitable distribution from the Mabry case, all of those would go away under their brand new theory that anything given by the legislature can never be taken away. That's really... Their argument is... The legislature could today go and re-clarify this, and next thing you know, you've got a cause of action. If they go in and you see a law come by tomorrow, that goes the other way, we're back in court. This could go on every year. Well, under statutory rights, the court has to defer to the legislature. They have the ability to do that. Now, often the courts will only make it prospective or they'll have a savings clause. You mentioned savings clause in the case prior to us. Those are commonly adopted. They rely so much on Wray as the standard. It's not. Wray was a case where there was no retroactivity. They never used the word clarify, and the court said because we don't know whether it's substantive or clarifying, we have to do this analysis. I submit Wray doesn't apply here because they have told you it's clarifying. Now, I'm not arguing that it's enough to simply slap the word clarifying on, but here there is more. We've had a number of judges say fees only mean administrative fees because the context was they were worried about landlords overcharging tenants. The reason this gets unanimous legislative support is these court costs have always been allowed. There are good public policy reasons why you don't want to have the landlord just simply pass that cost on to all tenants. So if it's not the defaulting tenant that pays the filing fee, everyone's rent goes up. That's why this is, as a matter of public policy, landlords aren't getting rich on this. It's an out-of-pocket expense that they're getting back. That's been the history. I think it's undisputed. I follow that. But, you know, they passed this act, and they've been meeting, and they could have, if they wanted to, they could have done something, you know, during that time period. They didn't have to wait until someone actually sued, get in court, the whole bit, and then go and rush something through and put it through and then change the law on it. So, I mean, I know that deals with a whole different matter, but the whole business of, you know, I think it just comes down, your argument is and seems to be pretty much what's being said here is that they can do what they wanted to. If they give you a right, they can take it away. That's the end of it. Yes, Judge. It doesn't matter when they take it. As long as you can have that so-called right, if it's just statutory, you won't have it. But let's go back to the other question. If that statute codifies a common law, would that follow? So, I think it really, I think if it's created, it's a potentially more complicated question. Okay, we're good. That's the next question. Yeah, that we don't have here. It's not before. It's not before, right? This is, here it's undisputed that the law contracts would have applied beforehand and they contractually agreed to pay the fees. So the only reason, you know, that they did it here is because of this statute. The reason it took a long time is no one thought there was anything wrong with charging the court costs and service fees to tenants. So the law was adopted in 2009, but nothing happened until 2017. No one brought a claim because everyone thought it was fine. What about the attention of the legislature to make this change in 2018 in the midst of all of this? The lawsuits? Absolutely. Was it the court case that did it? How did they? Well, in the Hargrave case, the court for the first time said, wait a minute. It says any fees in these out-of-pocket expenses cannot be recovered. And then the legislature said immediately, that's not what we intended. We were talking about landlords charging administrative fees for processing eviction, like back in Friday. We never intended to say landlords can't pass on these court costs and service fees. So that's why they hastily passed the 2018 amendment. But they didn't include language on clarification. They never said it was retroactive. So I do think it was a very difficult question for the court to answer in Suarez is, is it clarifying? And I understand the decision that it's substantive. The way it was structured, they added a whole new subsection I. They didn't change the definition of fees. And that's why in 2021, the legislature said, I guess we did a bad job clarifying what we meant. We're going to come back in and we're going to use clarifying in all capital letters. We're going to say retroactive and we're going to say we're talking about administrative fees. That is what we meant. But clearly, we didn't convey that well. And now we're going to make it clear that this, this didn't move fast enough on this case. It started in 2018. They moved. And maybe it might have been a court fact, of course, I know they went to a class action, but had they moved quickly before 2021 under your argument, they're good. Yeah, they got a judgment beforehand, for sure. That's right. Once you get a judgment, we all agree. My friends and I agree that a judgment is when the judgment vests for statutory rights. And I think the law is clear that for statutory rights, that's only when they vest. So if they had raced quickly and gotten a judgment, you're right, we wouldn't be here. But if it's a pending case, and only if the legislature makes it clear they want it to apply to pending cases, they don't have to do that. But they said explicitly this applies to any case pending on adoption. And they can do that. The only cloudy part to the case, and I'm not sure it's that cloudy, is once the court says it's substantive, what you've done here, this clarifying of amendment, it seems to me you could come back and enact an entirely different statute that could be non-substantive. But to take a statute that's substantive, and then add an amendment to it, and say the amendment now makes it non-substantive, is a court determination, I guess, still. Does that, in fact, make it non-substantive? And that really probably goes to the heart of it. It does. That's well said, Judge Wood. I agree that that's the question is, can they go back, and is it a clarifying change now given that there's a ruling that the prior change was substantive? I think when you read the change, the reason I talked so long about administrative fees is that's what they have inserted the word administrative each time. That's the new clarification. They've said, wait a minute, maybe we can't just have a new carve-out for out-of-pocket. The court said that that was a substantive addition. It was a creation of a new allowable charge. What we really meant was that the only ones we're prohibiting were administrative fees. So it is different. Instead of a new allowed charge, they've gone back and redefined the prohibited charge. So it is different than the last time. Plus, again, with the headline saying, this time we really mean clarifying. And we cited a number of cases saying, when the court says it's clarifying, I'm sorry, when the legislature says it's clarifying, that really should end the inquiry. Because the whole purpose of the court is to try to find out legislative intent. The first time, it wasn't clear. And so you had to do the analysis. And the way they drafted it made it look substantive. So I understand that decision. This time, they've tried to make it very clear that it is, in fact, clarifying. The only other point I want to make in connection with their claim of vested rights, you know, they talk a lot about Forrest, which is a standing case. It's not a case around retroactivity. But the standard they propose has no limits whatsoever. If you were to adopt my friend's view and say that any time a statute gave you a right, it could not be taken away, it would overturn not just Dyer, but all the other cases upholding retroactivity that we cite in our case. Bowen v. Mabry would be overturned, because the legislature created a right of abatement that then got taken away by the subsequent legislation. Judge Floyd. In Forrest's case, did he mention Dyer? It did not. So Dyer is still good law? It is good law. They argue that it's overturned, sub silentio, I guess. But you're right. Dyer clearly is good law. There's no flags. It's true it hasn't been cited that much recently, but it's because it's an established precedent. It was cited a few times. And it's cited in the Atlantic Railroad case. That's one that my friend mentioned. But what was different there is that person was put out of the train. So the law changed the rates, but the reason he had a cause of action was he suffered the common law claim, which was a recognized tort claim. There's a bunch of old decisions, fun to read if you have time, where people get put out of a train. The train stops at a red light, and you're miles from anywhere. That is an injury to that person. And what the court said is, he still has his claim, not his claim for a refund of any additional monies he paid, but he has a claim because he stuck off a train in the middle of nowhere because all he brought with him was this legislative fare, and you can't go back and take that away from him. But it really is a tort case. It's not a simple case here. Here, these folks, they never changed, to your point, Judge Niemeyer, about the permit with the change. These tenants had no idea of the statute. There's no reliance. There's no change in conduct. They paid these fees and moved on. So they didn't do anything differently. Their only claim is that we've overpaid because we think the law now says you shouldn't charge these fees. The legislature's now said, we never intended to prohibit those fees. So there was never any injury as the legislature determined it. But this is a purely legislative right that the court is Is that it? Thank you. Thank you, Your Honor. Thank you. Mr. McGinnis, do you have a little rebuttal? Thank you, Judge. I want to take this time to address, Judge Wynn noted, this was a new one for me in terms of North Carolina law. And it is not the case that there is a delineation between statutory and common law such that one vests at injury pursuant to the Constitution and one requires a judgment. And let's start with Dyer. Because that's the case he just said establishes the principle. You're saying before Dyer, if it's clear before Dyer, there's no such thing? I think that's what my friend said. He said Dyer establishes it. And no North Carolina court has ever found that an injured party's claim is retroactively stripped. All of the cases cited that required a judgment did not involve an injury. It has literally never happened. What Dyer says, so this is the, it's a short opinion. Check my math. They like the first clause of the end of this opinion that says, if the penalty had been reduced to judgment, then there's an or. Or had been given to the injured party in the nature of liquidated damages, the case would be essentially different. Dyer identifies that there are different paths. You may need a judgment if you do not get the protection of the open courts clause from an injury or the passage of time. Statute of limitations is a creation of statute. You do not need a judgment for that to be a vested right. We provided the court with additional cases that were pure statutory creations. Train tickets, dog bites, laws of corporation. There were no judgments in those cases. The legislature did not take it away in those instances. The courts found, the North Carolina Supreme Court found that those statutory claims vested separate and apart from a judgment. That's what they said in there. You had this fellow here saying, this law says you can get $100 from the commission. Commissioners are pretty political folks. They got the legislature to get rid of that $100 fee. And the Supreme Court said, yeah, you don't have to pay it. You had invested until you actually established that you can get that fee. I guess the judgment of it. Not an injury case. You think the distinction is that's a penalty as opposed to an injury? Absolutely. The open courts clause doesn't protect penalties. It says every person for an injury done him in his lands, goods, personal reputation shall have remedy. And Dyer says if the penalty had been reduced to judgment, that's their argument, or had been given to the injured party in the nature of liquidated damages. So if there was an injured party, there's no injured party in the person, a private attorney general action regarding the publication of who paid their taxes and how much they paid. There was no injured party. They don't get protection of the open courts clause. That's why they don't discuss the open courts clause. That's why Dyer's not discussed in Forrest, which establishes what the term injury means. But Forrest, there was only a standing case, wasn't there? It's a standing case. And the way they determined what the law of standing is in North Carolina is what the term injury means in the open courts provision. Wasn't that a cart before the horse argument? A little bit. It's a two-part argument. First, we've got to establish that injuries vest at the time of action. There's a long list of case law. Just because there are other cases that required a judgment where there was no injury doesn't mean that there isn't hundreds of years of cases in which there was an injury and that vested. Then we need to establish, were these claims injured? Well, the payment of the unlawful fees is an easy one. That's economic damages. And then what the court said in Forrest is, if you have an infringement of your legal right, we think that overrules some of the cases. But it may well be that your legal right requires a personal right, such that private attorney generals like actions like Dyer or some of the cases that don't involve injury aren't impacted by Forrest. You know this, I know it's important to your side to talk about injury, but really what we're talking about is the reimbursement of costs. And this is an ejectment action. And the 2009 statute talks about certain filing fees that can be collected and certain things they can't. And it's not totally clear if you're just reading that statute whether court costs for filing an ejectment and paying the sheriff is compensable. But it strikes me a little awkward that we're calling the obligation to pay a filing fee injury. In other words, it's a contractual obligation and the legislature apparently took it away, but then restored the reimbursement of costs. And that's all it is. It's just a reimbursement of costs for the process. As a matter of fact, if you're talking about fairness, that's pretty fundamental that if somebody requires an ejectment process, that is part of the default. They pay the cost of filing fee. And so every time you talk about injury, I'm trying to figure out how are they injured. I mean, they had the legal obligation to pay something. They didn't. They didn't. And it was, according to your colleague, it's unclear what that obligation was on the 2009 statute. And so that's why he argues that the 2018 is clarifying. But let me address the, let me make two quick points. I didn't appreciate fully whether it's clarifying a substantive, because I've always believed that you can make substantive changes retroactive as long as you make it clear. The Supreme Court's talked about that many times. The presumption is prospective, but unless a legislator says otherwise. And then the only question is the constitutionality of such a thing. But I guess both of you are not really in that, going that far. Let me respond quickly, because this is something that came up in the Suarez case. Because we heard, these are our costs, they're not even fees. There's a case called State v. Webb, which essentially says costs and fees are two sides of the same coin. The court has costs, and they charge a fee. That is a cost for the landlord, and they charge a fee to the tenant, who is charged a fee. Fees and costs are two sides of the same coin. And they're not obligated to pay them, because the contract wouldn't have allowed them to do it. And nothing about this statute in 2009 prohibited landlords from using the court process to recover eligible court costs, which they would otherwise be eligible to recover. What the contract, or what the statute addressed, was the ability to charge them simply for filing, outside of the court process. And it wasn't allowed before. And it was allowed after 2018. Filing fee that had to be filed for an ejectment procedure, and a cost to pay the sheriff to accomplish the ejectment. It is. And so they suffered costs, and they assessed fees. And you could attempt to recover those through the court process. Filing fees are actually not recoverable under North Carolina law. Sheriff fees are. And so these costs and fees are two sides of the same coin. This is something that came up in Suarez. And I think that's, if you find that there was a payment prior to the 2018 amendment of these fees, they suffered monetary harm. They suffered an injury. That's protected by the Open Courts Clause. There's no artificial. They didn't suffer anything until it was awarded against them. They paid it, but they, in other words. So it was never awarded against them. It was imposed as part of the collection costs. This wasn't through the court process. There were no costs assessed. What happened was there was a dismissal. What happened is they were charged. And that's been alleged. And not in dispute at a judgment in the pleading stage. They were charged. They demanded that they be paid. And it was an unlawful fee. That's an injury. We do not have a distinction between statutory and common law. That is right down the line. Statutory, you must get a judgment. The case law just doesn't support that. There's six or seven cases that we provided just an oral argument that involve statutory rights that vest without a judgment. There's multiple paths here. One of them is injury. That's the one that's protected by the North Carolina Constitution. And although Forrest is a standing case, it defines exactly what injury is. And according to Forrest, it doesn't mean that it could be that there are people who have retroactive effects. You can have retroactive statutes. And as applied, it's possible that this statute, as applied to somebody else, could have retroactive effect. But as to Ms. Bass and Ms. Wiggins, who suffered a harm, they would be the first individuals in North Carolina jurisprudence to have a claim stripped where they suffered an injury. Thank you. Dyer has been around for quite a bit, hadn't he? Dyer has been around. And because it's a penalty case, it limits itself. It's a private attorney general action. They were very common at the time. It doesn't have anything to do with injury. And in fact, the Williams case, which talks about common law principles, it doesn't say it has to be a common law claim. There's nothing in there that says this is similar to leaving yourself at a train. It just says there's common law principles. And it distinguishes Dyer because it says it's not a penalty case. Dyer's a penalty case. If it only stands for the fact that on a private attorney general action you need a judgment, then maybe it hasn't been overruled. But there it stated... I want to make a point. That's a case that's 122 years old. It would be nice to put a Supreme Court in North Carolina. Once again, I must say, they ought to allow these cases to be certified. But I've already been spoken on that. I've been on deaf ears there. They don't want to do it. We'll do it for them. We will do what we can with the legislature, Judge. All right. Thank you. You've probably heard it's our custom and practice. And you probably know it's actually unique in the country, I think, for us to come down and shake hands with counsel following each case. We're observing our protocol on COVID still. And we hope we can lift that soon. But at this point, our greetings to you from the bench. And thank you for your arguments. We'll have to do. We welcome you back. Come back next time. We'll shake your hands. All right. Thank you, Your Honors. Thank you, Your Honor.
judges: Paul V. Niemeyer, James Andrew Wynn, Henry F. Floyd